UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES F. USITALO, on behalf of
TONI R. USITALO,

        Plaintiff,                             Case No.  1:16-cv-799

v.

                                         HON. ROBERT J. JONKER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

## OPINION

      This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.  The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

      The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Toni Usitalo was fifty-seven years of age as of her date last insured. (PageID.98.) She had a high school education, and was previously employed as a clerk and as a manager of sales and scheduling. (PageID.72, 182.) She previously applied for benefits on June 26, 2007, alleging disability beginning November 11, 2006. That application resulted in an unfavorable decision by ALJ Arline Colon on February 16, 2010, and does not appear to have been further pursued.

(PageID.84–92.) Instead, Mrs. Usitalo filed for DIB a second time on April 15, 2013, again alleging disability beginning November 11, 2006, due to a brain injury and a massive brain bleed in 2013, a spinal cord injury, congestive heart failure, high blood pressure, asthma, COPD, Raynaud's disease, Erb's Palsy, an anticoagulant disorder, and arthritis. (PageID.98–99, 169–174.) These applications were denied on September 6, 2013, and Mrs. Usitalo subsequently requested a hearing before an ALJ. (PageID.115–120.) Unfortunately, Mrs. Usitalo died on August 13, 2014, shortly before the administrative hearing in this case. (PageID.679.) Upon her death, her widower, James Usitalo, was substituted as the claimant in the administrative proceedings. On September 9, 2014, Mr. Usitalo appeared with a non-attorney representative before ALJ James J. Kent for an administrative hearing at which time both Mr. Usitalo and a vocational expert (VE) testified. (PageID.57–78.) On November 7, 2014, the ALJ issued an unfavorable written decision that concluded Mrs. Usitalo was not disabled prior to her date last insured. (PageID.41–56.) On April 2, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.31–37.) Thereafter, Mr. Usitalo initiated this action under 42 U.S.C. § 405(g).

Mrs. Usitalo's insured status expired on December 31, 2011, several years before her death. (PageID.98.) To be eligible for DIB under Title II of the Social Security Act, Mr. Usitalo must establish that his wife became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

**ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Mr. Usitalo has the burden of proving the existence and severity of limitations caused by his wife's impairments and that she was precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Kent determined Mrs. Usitalo's claim failed at step four. The ALJ first determined that the issue of whether Mrs. Usitalo was disabled between her alleged onset date and

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

February 16, 2010, had previously been addressed by ALJ Colon's decision. ALJ Kent concluded

that the doctrine of *res judicata* applied to that period, and accordingly stated he would address the

issue of disability beginning February 17, 2010. (PageID.44.) Proceeding with the five-step

evaluation, the ALJ determined, at step one, that Mrs. Usitalo did not engage in substantial gainful

activity between her alleged disability onset date and her date last insured. (PageID.46.) At step

two, the ALJ found that through the date last insured, Mrs. Usitalo had the severe impairments of:

a history of mitral valve replacement (2002), on chronic Coumadin anticoagulation; hypertension;

history of right hip bursitis; chronic obstructive pulmonary disease (COPD); migraine headaches;

and one instance of renal failure. (PageID.47.) At step three, the ALJ concluded that, through her

date last insured, Mrs. Usitalo did not have an impairment or combination of impairments that met

or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P,

App. 1. (PageID.47.) At step four, the ALJ determined Mrs. Usitalo retained the RFC, through her

date last insured, based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except the
> claimant can push and pull frequently. The claimant can occasionally
> stoop and crouch. She can perform frequent manipulative maneuvers
> with the left hand for fingering, handling, and feeling. She should
> avoid concentrated exposure to noise, vibration, fumes, odors, dusts,
> gases, poor ventilation, etc. The claimant's exposure to illumination
> or florescent lighting cannot be any brighter than that of a typical
> home, office setting, or public building. Her exposure to noise
> intensity levels can be no more than a moderate level as defined in the
> S.C.O. which is that of a business office where typewriters are dues,
> [sic] department stores, grocery stores, light traffic, and a fast food
> restaurant in off hours. The claimant cannot perform fast-paced
> work.

(PageID.47.) Continuing with the fourth step, the ALJ found that through her date last insured,

Mrs. Usitalo was capable of performing her past relevant work as a clerk and as a manger of sales

5

and scheduling. The ALJ stated that because Mrs. Usitalo's condition did not worsen during the unadjudicated period, he was bound by the previous ALJ's determination on the matter. (PageID.51–52.)

Having made his determination at step four, the ALJ concluded that Mrs. Usitalo was not disabled at any time between her alleged disability onset date and her date last insured. (PageID.52.)

## DISCUSSION

### 1. ALJ Kent's RFC Determination.

In assessing Mrs. Usitalo's claim for benefits, ALJ Kent adopted the RFC findings previously articulated by ALJ Colon. (*See* PageID.48.) Mr. Usitalo argues his wife's impairments worsened subsequent to ALJ Colon's decision and for this reason the decision by ALJ Kent to adopt the previous RFC is not supported by substantial evidence. The issue of whether or when a subsequent ALJ must follow an RFC determination articulated by a prior ALJ has been addressed by the Sixth Circuit in *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir.1990), and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), as well as by the Social Security Administration in Acquiescence Rulings ("AR") 98–3(6) and 98–4(6).

### A. *Dennard v. Sec'y of Health & Human Servs.*

Dennard filed an application for benefits which was eventually denied on the ground that while he could no longer perform his past relevant work, he retained the ability to perform sedentary work which existed in significant numbers. *Dennard*, 907 F.2d at 598–99. Dennard later submitted another application for benefits. This latter application was denied by an ALJ on the ground that Dennard *could* perform his past relevant work. *Id.* at 599. An appeal of this decision

to federal district court was unsuccessful. The Sixth Circuit reversed the district court and ordered that the matter be remanded for further consideration. *Id* . at 600. Specifically, the court held that the latter ALJ was estopped, on res judicata grounds, from contradicting the prior determination that Plaintiff was unable to perform his past relevant work. *Id.*

    B.  *Drummond v. Comm'r of Soc. Sec.*

    Drummond filed an application for benefits which was denied based on a finding that while she could no longer perform her past relevant work she could perform sedentary work which existed in significant numbers. *Drummond*, 126 F.3d at 838. Drummond later filed another application for benefits which was denied based on the finding that she retained the ability to perform medium work. *Id*. at 838–39. After unsuccessfully appealing the matter in federal district court, Drummond pursued the matter in the Sixth Circuit. *Id.* at 839–40. Based, in part, on the *Dennard* decision, the *Drummond* court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id.* at 840–42. Thus, if an earlier ALJ makes a finding regarding a claimant's RFC, a later ALJ is bound by that RFC determination absent evidence to the contrary. *See, e.g.*, *Gay v. Comm'r of Soc. Sec.*, 520 F. App'x 354, 356 (6th Cir. 2013).

    C.  *Acquiescence Rulings 98–3(6) and 98–4(6).*

    Finding that *Dennard* and *Drummond* conflicted with Social Security policy, the Social Security Administration issued Acquiescence Rulings 98–3(6) and 98–4(6). *See* AR 98–3(6), 1998 WL 274051 (S.S.A., June 1, 1998); AR 98–4(6), 1998 WL 274052 (S.S.A., June 1, 1998). With respect to how *Dennard* and *Drummond* differed from Social Security policy, the Social Security Administration observed:

Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period.

AR 98–3(6), 1998 WL 274051 at 29771; AR 98–4(6), 1998 WL 274052 at 29773.

As the Social Security Administration recognized, the *Dennard* and *Drummond* decisions conflicted with Social Security policy. Specifically, the Sixth Circuit concluded that where a final decision by the Social Security Administration contains findings regarding the claimant's ability to perform her past relevant work (*Dennard*) or the claimant's RFC (*Drummond*), the Administration "may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding." AR 98–3(6), 1998 WL 274051 at 29771; AR 98–4(6), 1998 WL 274052 at 29773.

Accordingly, the Social Security Administration concluded that it would apply *Dennard* and *Drummond*, within the Sixth Circuit, as follows:

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law,

> regulations or rulings affecting the finding or the method for arriving
> at the finding.

AR 98–3(6), 1998 WL 274051 at 29771; AR 98–4(6), 1998 WL 274052 at 29773.  In other words, the Social Security Administration adopted, with respect to applications brought within the geographic territory of the Sixth Circuit, the holdings in *Dennard* and *Drummond*.

In sum, an Administrative Law Judge is bound by a previous Administrative Law Judge's residual functional capacity absent changed circumstances.

### D.    ALJ Kent's RFC Assessment

In his decision denying Mrs. Usitalo's application, ALJ Kent began his RFC discussion by stating "there is no evidence of an improvement, an exacerbation, or change in condition since the prior hearing and before the date last insured.  Therefore, the prior Administrative Law Judge's findings regarding the claimant's residual functional capacity are binding." (PageID.48.) The ALJ cited the *Drummond* decision and AR 98–4(6) for support. (PageID.48.) The ALJ then discussed the medical and opinion evidence of record. While the ALJ acknowledged Mr. Usitalo's testimony that his wife's condition worsened after the previous decision, he found these allegations were not credible.  The ALJ then concluded "there is no evidence of a worsening or exacerbation in the claimant's physical condition between the day after the prior Administrative Law Judge's decision and the date last insured." (PageID.51.)  The Court finds that this conclusion is supported by substantial evidence.

In the February 16, 2010, decision, ALJ Colon gave a thorough and accurate summary of the medical record through that date:

> A pulmonary function test at Ex. 10F reveals an FEV1 of 1.93 before
> bronchodilation and 2.18 after bronchodilation.  Upon recent
> examination the claimant's lungs were clear to auscultation

bilaterally. The claimant, though she has been admonished not to, continues to smoke. Recent cardiology reports indicate her mitral valve is working well and her Echocardiograms have been normal. A chest x-ray was also normal. The claimant's renal failure was acute and "resolved promptly." Her latest blood pressure reading was 114/64 which is within normal limits. Ex. 4F 13 indicates her blood pressure is well controlled.

The claimant has a history of right hip bursitis for which she receives periodic injections. Examination of the claimant reveals pain to palpation but a "good and painless range of motion of the lumbosacral spine and right hip." Her injections warrant "immediate and good" pain relief. A CT of the claimant's head was also normal.

The claimant was examined, at the request of the state Disability Determination Service (DDS), by Dr. Kahn, M.D., who noted that the claimant's cardiac examination was within normal limits as was her spine and range of motion. Her gait was normal and she was able to stand on toes and heels as well as tandem walk without any difficulty. Her motor examination was normal with normal muscle tone, bulk, power and reflexes. Her sensory examination was normal. Neurologic examination of the claimant has been benign. There is no indication in the objective evidence that the claimant's migraine headaches are as frequent or as severe as alleged. Such objective signs and findings do not support a finding of total disability.

The claimant's allegations that her INR levels are dangerously high are not supported by the objective evidence. Likewise, her allegations that she uses her nebulizer three to four times per day are not supported by the objective evidence. The claimant has alleged medication side effects, but these complaints have been inconsistent indicating side effects from her medications have been transient in nature. The claimant only takes Tylenol for her pain and continues to smoke, which indicates her pain and breathing difficulties are not as limiting as alleged.

(PageID.90–91.) The evidence subsequent to ALJ Colon's decision does not support Mr. Usitalo's argument that his wife's impairments worsened after the prior decision and before her date last insured such that ALJ Kent was precluded from adopting the previous RFC.

Mr. Usitalo alleges his wife's condition worsened in three primary areas: she experienced increased fatigue and confusion, shortness of breath, and lower extremity weakness that lead to gait instability and falling. The record does not support his contentions.

### i.    Fatigue and Confusion

At the hearing, Mr. Usitalo alleged that during the relevant time period his wife's anticoagulant disorder was like a "roller coaster." (PageID.70.) When her INR levels were high, she was confused, when they were low, she was fatigued.[2] In fact, Mr. Usitalo alleged his wife was so fatigued that she spent the majority of her waking hours in bed.

During this time period, Mrs. Usitalo sought care both at the ER and through Dr. Peter Schwartz, who treated her on a bi-weekly basis. None of these records support Mr. Usitalo's allegations. A May 10, 2010, ER note for example, found that Mrs. Usitalo had an INR of 20.3, well over her recommend range. Yet she was noted to be awake, alert, and oriented.[3] (PageID.256–257.) Dr. Schwartz's treatment records indicate that Mrs. Usitalo, save for a few isolated complaints, denied experiencing any bleeding problems. (*See, e.g.,* PageID.266, 270–274, 293.) During this course of treatment, Dr. Schwartz would occasionally adjust Mrs. Usitalo's prescribed anticoagulant medication dosages based on her INR numbers. In discussing these records, the ALJ correctly noted that Mrs. Usitalo never complained of the extreme fatigue and confusion to Dr. Schwartz that Mr. Usitalo testified his wife experienced. (PageID.50.)

---

[2] INR is a ratio indicating the rate at which an individual's blood clots. "When the INR is higher than the recommended range, it means that your blood clots more slowly than desired, and a lower INR means your blood clots more quickly than desired." *Prothrombin Time Test*, MAYO CLINIC (Nov. 24, 2015), http://www.mayoclinic.org/tests-procedures/prothrombin-time/details/results/rsc-20163828. Mrs. Usitalo's recommended INR was between 2.5 and 3.5. (*See, e.g.*, PageID.355.)

[3] The treatment note abbreviated this as "AAO." (PageID.257.)

Mr. Usitalo contends that this confuses the issue because the purpose of his wife's visits with Dr. Schwartz was to manage her INR levels, not seek treatment for her fatigue. (PageID.718.) But this contention is to no avail for two reasons. First, it runs directly counter to his allegations at the hearing. (PageID.70.) Second, the fact would remain that Mrs. Usitalo did not seek treatment from Dr. Schwartz for fatigue, and Mr. Usitalo points to no other records that would indicate she complained of fatigue and confusion during the relevant time period to her care providers. Mr. Usitalo's argument on this point is largely a contention that the ALJ should have found his statements credible. But, as is discussed below, the ALJ's credibility discussion is supported by substantial evidence.[4]

ii.    *Shortness of Breath*

Mr. Usitalo also contends his wife's breathing worsened subsequent to ALJ Colon's decision. Mr. Usitalo primarily points to the results of a spirometry test conducted on April 12, 2011, by Dr. Albert Singh, a consultative examiner. That test revealed a forced expiratory volume in one second (FEV1) of 1.28 liters before a bronchodilator and an FEV1 of 1.62 after using a bronchiodilator. The doctor noted that Mrs. Usitalo had exerted maximal effort and became dizzy and disoriented after each test. (PageID.240.) Mr. Usitalo contends this plainly shows evidence of a worsening condition. At this point, Mr. Usitalo provides little else rather than his lay interpretation of the test. Later in his brief, however, he notes that Dr. Thomas Gravelyn, M.D., a pulmonary specialist, reviewed the test and indicated that he would expect that Mrs. Usitalo could perform only

---

[4] Plaintiff also appears to contend the ALJ erred by attributing Plaintiff's alcohol use to her fluctuating INR levels. (PageID.700.) Contrary to Plaintiff's assertion, the ALJ's conclusion is well supported. On October 5, 2011, Dr. Schwartz stated that claimant's INR "has been in therapeutic range on current dose, then suddenly increases to greater than 5. When dose is lowered, INR stays subtherapeutic and gradually dose is increased to current level. Intermittent alcohol use could account for these sudden high INR results but she will not admit to drinking." (PageID.390.) At that visit, Dr. Schwartz could smell alcohol on Plaintiff's breath. (PageID.390.) The ALJ, therefore, made no error.

sedentary activities. The final responsibility for determining RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Still, the ALJ was free to consider the doctor's opinion and determine what weight, if any, it should be given. Here the ALJ found that Dr. Gravelyn's opinion was entitled to little weight and, for reasons explained more fully below, that determination is supported by substantial evidence.

Other records fail to support Mr. Usitalo's allegations. Treatment notes from a December 2011 hospitalization note that Mrs. Usitalo's COPD had likely been exacerbated from an infection and her continued use of cigarettes. But with treatment, her condition improved. (PageID.286.) On several occasions, chest x-rays were normal. (PageID.255, 257, 286.) The ALJ also found it relevant that Mrs. Usitalo told Dr. Singh that she was not currently seeing a pulmonologist. (PageID.235.) Mr. Usitalo contends that the ALJ could not use the fact that his wife was not seeing a pulmonologist against her without considering her ability to afford treatment. Again, this is largely an argument about credibility which is addressed below. Here, the Court will note that there is some evidence that Mrs. Usitalo was not able to see a specialist because of a lack of insurance. (PageID.299.) Yet, her care providers provided her with information that would have enabled her to seek services for free or at minimal cost. (PageID.309.) Mrs. Usitalo later admitted she did not follow up on that advice. (PageID.310.) With this in mind the Court concludes the ALJ did not err in noting that, given the severity of the complaints, he would expect that Mrs. Usitalo would seek treatment from a specialist for the condition.

### iii.    *Lower Extremity Weakness*

Finally, Mr. Usitalo contends that the ALJ should have found his wife's lower extremity numbness as well as her complaints of falling demonstrated a worsened condition. He

further notes that after the first ALJ's decision, his wife was prescribed Vicodin to manage her back pain. While this is true, it is also the case that in December 2011, it was noted that Mrs. Usitalo rarely needed the Vicodin. Accordingly, it appears Mrs. Usitalo's back pain was well controlled through her date last insured. (PageID.316.) Moreover, while his wife did complain of back pain on occasion, there were times when she also reported experiencing no pain. (*See* PageID.292.) Regarding his wife's lower extremity numbness, Mr. Usitalo largely depends on a September 7, 2011, treatment note. At that visit, his wife stated she was unsteady on her feet and had experienced several falls. (PageID.309.) She would stumble right after she stood up and had to wait a few seconds to steady herself. (PageID.309.) On this visit, Mrs. Usitalo could not tandem walk or stand with her eyes closed. But she also had a normal EMG and she also had alcohol on her breath. (PageID.309.) Mr. Usitalo complains the ALJ made an unsupported and unjustified connection between Mrs. Usitalo's alcohol use and her gait instability. The Court disagrees. When specifically discussing Mrs. Usitalo's gait instability, Dr. Schwartz noted that Mrs. Usitalo had denied heavy alcohol use. (PageID.317.) It was logical for the ALJ to infer from the discussion that Dr. Schwarz believed Mrs. Usitalo's alcohol use was connected, at least to some extent, with her gait instability, and not due to some underlying condition.

Finally, the ALJ permissibly relied on Dr. Singh's evaluation, which indicated Mrs. Usitalo ambulated well and had no problems getting on or off the exam table and further was able to get up and out of a chair. While she had difficulty walking on her heels and toes, she could squat to the ground. She also had a negative straight leg raise test and a full range of motion except for a reduced lumbar forward and lateral flexion and extension. (PageID.238.)

14

In sum, the Court concludes the medical evidence subsequent to ALJ Colon's decision and prior to Mrs. Usitalo's date last insured does not demonstrate the type of changed circumstances contemplated by the acquiescence rulings. Furthermore, the evidence summarized above is entirely consistent with the ALJ's ultimate RFC determination. Accordingly, this claim of error is denied.

## 2. The ALJ's Evaluation of the Medical Opinions.

As noted above, in support of his wife's application for benefits, Mr. Usitalo submitted a letter, dated September 22, 2014, from Dr. Thomas R. Gravelyn, M.D. (PageID.672.) In it, the doctor wrote that he had examined the results of an evaluation that was conducted by Dr. Singh and that based largely on the FEV1 test results, he would expect that Mrs. Usitalo would only "be able to perform sedentary activities such as a desk job or computer work, and would not expect her to be able to do any heavy lifting." (PageID.672.) The ALJ gave this statement only little weight. (PageID.51.) The ALJ concluded Dr. Gravelyn's opinion was speculative because he never treated Mrs. Usitalo. Furthermore, the ALJ stated the doctor had only evaluated Dr. Singh's report, and not the underlying medical records that Dr. Singh had the benefit of reviewing. With these considerations in mind, the ALJ decided to assign greater weight to Dr. Singh's opinion. (PageID.51.) In his second claim of error, Mr. Usitalo contends the ALJ erred in evaluating both medical opinions. The Court disagrees.

The regulations provide that the agency will evaluate every medical opinion received "[r]egardless of its source," and that unless a treating source's opinion is given controlling weight, the agency will consider the factors set forth in § 404.1527(c)(1)-(6) in deciding the weight given to any medical opinion. *See* 20 C.F.R. § 404.1527(c). While the ALJ is required to give "good

reasons" for the weight assigned a treating source's opinion, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). However, while the ALJ is not required to explicitly discuss each of the regulation's factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007); *see also Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (noting that "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning") (internal quotation marks omitted)).

Mr. Usitalo's primary complaint with the ALJ's discussion of Dr. Gravelyn's opinion is that the ALJ did not explicitly weigh the doctor's experience and expertise in pulmonology. Had he done so, Mr Usitalo contends, the ALJ would have given the opinions more weight. As noted above, the ALJ was not required to explicitly discuss these factors. Moreover, while the speciality of a medical source is a relevant consideration, it is also true that the regulations note that the Commissioner will also weigh the "extent to which a medical source is familiar with the other information in your case record." 20 C.F.R. § 404.1527(c)(2). Here, the ALJ properly noted that Dr. Singh had reviewed much of Mrs. Usitalo's medical record, while Dr. Gravelyn had reviewed only a single test result.

Nor did the ALJ err in assigning more weight to Dr. Singh's evaluation. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.") True, Dr. Singh's evaluation does indicate that a pulmonary examination was significant for course

16

breath sounds, diffuse bilateral wheezing, and an obstruction. (PageID.237–238.)  But the ALJ explicitly noted these findings  (PageID.49) and Dr. Singh also noted that Mrs. Usitalo was "managing" these symptoms with medication.  (PageID.238.)  At bottom, Mr. Usitalo invites the Court to substitute Dr. Gravelyn's conclusions for those of Dr. Singh's.  But, as noted above, the ALJ gave an adequate justification for assigning little weight to Dr. Gravelyn's opinion.  Moreover, the ALJ had the benefit of the agency consultant's opinion, who reviewed many of Mrs. Usitalo's updated records and concluded that she was capable of perfomring a range of light work.  (PageID.106.) "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I) (2013)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Accordingly, the Court finds the ALJ's evaluation of the medical opinions is supported by substantial evidence and furthermore complies with agency regulations.

### 3.     The ALJ's Credibility Evaluation.

At the administrative hearing, Mr. Usitalo alleged that his wife's impairments between the earlier decision and her date last insured imposed restrictions far greater than those ultimately accounted for by the ALJ.  As the ALJ described it:

> During the hearing, the claimant's husband testified that the claimant's breathing impairment had worsened significantly since the prior Administrative Law Judge's decision, In March 2011, he lived with the claimant, and the claimant would rarely get out of bed.  She would be in bed 60 percent of the day because she was fatigued, had no energy, had "heavy legs," was confused, and needed to prop

herself up to breathe better. The claimant had INR fluctuations that
occurred until 2013. The claimant had extreme fatigue until her death
(Hearing Transcript).

(PageID.48.) Applying SSR 96-7p, the ALJ found that Mr. Usitalo's testimony alleging his wife

experienced an exacerbation in her condition after the first decision was not credible. (PageID.51.)

Mr. Usitalo contends the ALJ erred in making this credibility determination.[5]

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical

impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th

Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social

Security regulations make clear, however, a claimant's "statements about [her] pain or other

symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters*

*v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash*

*v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of

disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

---

[5]  Though not contested by either party, the Court questions whether the ALJ was correct in applying the
credibility framework to Mr. Usitalo's testimony. While Mr. Usitalo was substituted as the proper party he was
ultimately testifying about his wife's condition, not his own. Thus it would appear the ALJ could have evaluated his
testimony as an "other source" lay witness, as is often done when a claimant's spouse testifies or completes a thirty party
function report. The Court finds no reversible error on this point. It is plain that a credibility analysis is more stringent
than the required analysis for lay witness opinions. Indeed, opinions expressed by lay witnesses such as a claimant's
spouse are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting such. *See,
e.g.*, *Smith v. Comm'r of Soc. Sec.*, 481 F.3d 873, 876 (6th Cir. 2007). The ALJ is simply required to consider such
opinions and accord such the weight he finds appropriate. *See, e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x
392, 397–98 (6th Cir. 2014). Thus if the ALJ's analysis of Mr. Usitalo's testimony using the credibility framework
survives scrutiny (which the Court concludes it does), it follows it would also pass muster under the framework for
considering lay witness opinions.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ provided the following discussion of Mr. Usitalo's testimony:

> One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record (SSR 96-7p). Based on a consideration of all of the evidence in the case record, I find that her husband's statements of an

exacerbation are not fully consistent with the medical signs and laboratory findings and other information provided by medical sources, including the longitudinal medical record, to a degree that supports a finding of disability before her date last insured. As reported above, there is no indication of the extreme fatigue and confusion that the claimant's husband testified to during the hearing. The office visit notes reflect numerous occasions on which the claimant did not specify any particular fatigue or confusion complaints, which contrasts with the current claim of an exacerbation before the date last insured. Moreover, the treatment records show the claimant failed to comply with prescribed medications. Her clinicians warned that alcohol use could interfere with her medication but constantly noted alcohol on her breath (although she denied drinking). In addition, the claimant continued to smoke despite her breathing impairment. These may be an indication that her symptoms were not as severe as her husband purports (Ex. B4F). Accordingly, the [sic] her husband's allegations of exacerbation are not credible.

(PageID.50–51.) The ALJ's decision is well supported. The ALJ correctly noted there is no objective evidence indicating that Mrs. Usitalo ever complained to her doctors about experiencing fatigue. Despite numerous visits with Dr. Schwartz to adjust her INR levels – which Mr. Usitalo contends caused his wife's fatigue – Dr. Schwartz's treatment notes make no mention of fatigue. Likewise there are scant mentions of Mrs. Usitalo's confusion in the medical record. To the contrary, the record demonstrates Mrs. Usitalo was alert, oriented, and able to follow instructions. Treatment records from Mrs. Usitalo's May 11, 2010, hospitalization show she was alert and oriented with no focal neurologic deficits. (PageID.258.) During her INR evaluations, she was described as asking appropriate questions and was able to verbalize her understanding. (PageID.265.) Likewise Dr. Singh found her to be alert and oriented times three, with the ability to follow simple and complex commands. (PageID.237.)

Mr. Usitalo contends that the ALJ's reference to his wife's alcohol consumption, as well as her continued smoking, constitutes an improper character assessment that has been

disfavored in more recent administrative rulings. The Court disagrees. It was proper for the ALJ to take Mrs. Usitalo's inconsistent statements and lack of candor regarding her alcohol use into account in making his credibility determination. *See Adams v. Comm'r of Soc. Sec.*, No. 1:10 CV 503, 2011 WL 2650688, at *1 (W.D. Mich. July 6, 2011) (collecting cases). Furthermore, though Mr. Usitalo contends there were only a few isolated incidents, the record is replete with doctor's notes expressing concern regarding Mrs. Usitalo's alcohol use. On December 28, 2011, for example, an ER treatment note indicates that Mrs. Usitalo was walking sideways, and was speaking gibberish. (PageID.345.) While Mr. Usitalo thought this was because his wife had taken too much medication, examiners were able to smell alcohol on Mrs. Usitalo's breath and their single clinical impression was of alcohol intoxication. (PageID.343, 346.) Discharge notes indicated that the doctor was concerned with Mrs. Usitalo's alcohol use and instructed her to avoid consuming any alcohol because it could have a dangerous reaction with her medications. (PageID.340.) Less than a month later, however, she still reported consuming alcohol. Indeed, she said her use was "no more than normal." (PageID.355.)

Similarly, the ALJ did not err in noting Mrs. Usitalo continued to smoke despite being repeatedly cautioned by her physicians not to. *See, e.g.*, 20 C.F.R. § 404.1529(c)(3); *Marshall v. Comm'r of Soc. Sec.*, No. 13-CV-14255, 2015 WL 777940 at *5 (E.D. Mich. Feb. 24, 2015) ("under Sixth Circuit precedent, the ALJ was permitted to consider Plaintiff's continued smoking habit in evaluating his credibility"). It is also relevant to the consideration of her ability to afford treatment. *Watson v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-02483, 2014 WL 1093124, at *14 (N.D. Ohio Mar. 14, 2014). True, as Mr. Usitalo points out, it appears Mrs. Usitalo did reduce her smoking habit at some point from two packs a day to only three or five cigarettes a day. But even if the ALJ

erred on this point, the evidence and considerations mentioned thus far provide overwhelming support to the ALJ's ultimate credibility determination. In sum, the Court concludes the ALJ's analysis is supported by substantial evidence and fully comports with agency regulations.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED.**

A separate judgment shall issue.


Dated:      July 13, 2017           /s/ Robert J. Jonker                                 
                                 ROBERT J. JONKER
                                 CHIEF UNITED STATES DISTRICT JUDGE